IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ALLIANZ LIFE INSURANCE COMPANY OF
NORTH AMERICA, A Minnesota Corporation,

       Plaintiff,

vs.

                                                      No. 05-CV-0256 JCH/RLP

STEPHEN T. "BUD" RICHARDS and JANE
ANN DAY,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff Allianz Life Insurance Company of North America's Motion to Compel Arbitration of Counts II-VII of Defendant Day's Amended Counterclaim and to Stay Remaining Claims, with Accompanying Authorities, filed July 20, 2005 **[Doc. No. 31]** ("Motion to Compel Arbitration and Stay Litigation"), and Defendant/Counterclaimant Jane Ann Day's Motion for Injunction Prohibiting Allianz's Arbitration of Defendant Day's Counterclaims II-VII and Supporting Authority, filed April 20, 2006 **[Doc. No. 148]** ("Motion for Injunction Prohibiting Arbitration"). The Court having considered the motions, briefs, and relevant law, and being otherwise fully informed, finds that the Motion to Compel Arbitration and Stay Litigation is GRANTED, and the Motion for Injunction Prohibiting Arbitration is DENIED as moot.

### BACKGROUND

Plaintiff, an insurance company, brought this action against three individuals, two of whom had been insurance agents with the company. Defendants asserted various counterclaims against Plaintiff, and Plaintiff now moves to compel arbitration of several of the counterclaims

brought by one of the Defendants, Jane Ann Day.

The Motion to Compel Arbitration is based upon the arbitration clause in the controlling contract between Defendant Day and Plaintiff, the 1996 Service Agreement.  The parties do not dispute that the Service Agreement, and its arbitration clause, are valid and enforceable.

## DISCUSSION

I.  Plaintiff's Motion to Compel Arbitration and Stay Litigation.

    A.  Arbitration of Day's Counterclaims.

        1.  Applicability of Arbitration Clause to Day's Counterclaims.

Plaintiff argues that Counts II through VII of Defendant Day's counterclaim fall within the scope of the arbitration clause contained in the 1996 Service Agreement between Plaintiff and Defendant Day.  The arbitration clause provides in relevant part that "[a]ny controversy or claim arising out of or relating to this Agreement, including its interpretation, validity, scope and enforceability, or the breach of its terms, will be settled by arbitration."

"To determine whether a particular dispute falls within the scope of an agreement's arbitration clause, a court should undertake a three-part inquiry." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001).

> First, recognizing there is some range in the breadth of arbitration clauses, a court should classify the particular clause as either broad or narrow.  Next, if reviewing a narrow clause, the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause.  Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview.  Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it.

*Id.* (internal citations and quotations omitted).

The Tenth Circuit has held that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration," and that "any doubts should be resolved in favor of arbitration." *Armijo v. Prudential Ins. Co.*, 72 F.3d 793, 797-98 (10th Cir. 1995) (citations and internal quotation marks omitted); *see also Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004) ("the Supreme Court has long recognized and enforced a liberal federal policy favoring arbitration agreements," and "[u]nder this policy, the doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration") (citations and internal quotation marks omitted). However, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986) (citation and quotation marks omitted). The determination of the scope of an arbitration clause lies with the Court. *See Int'l Union of Operating Engineers v. Flair Builders, Inc.*, 406 U.S. 487, 491-92 (1972).

Defendants do not dispute hat the arbitration clause at issue here is broad and that it contains no limitations, *see* Defs' Resp. to Pl's Mot. to Compel at 2; *see also* Pl's Mot. to Compel Arbitration and Stay Litig. at 7 (citing *Daniels Ins. Agency, Inc. v. Jordan*, 657 P.2d 624, 625 (N.M. 1982)), or that Counts II through VII of Defendant' Day's counterclaim are covered by the arbitration agreement. Rather, Defendants maintain that Plaintiff cannot compel Defendant Day to arbitrate her claims because Plaintiff has waived its right to invoke the arbitration clause.

    2.  <u>Waiver of Right to Arbitrate Day's Counterclaims</u>.

In *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, the Tenth Circuit held that a district court must consider the following factors to determine whether a party has waived its right to arbitration:

3

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place"; and (6) whether the delay "affected, misled, or prejudiced: the opposing party."

39 F.3d 1482, 1489 (10th Cir. 1994) (citations omitted).  The Court concludes, in considering these factors, that Plaintiff has not waived its right to arbitrate Defendant Day's counterclaims. When Defendant Day filed her counterclaim on May 27, 2005, and Amended Counterclaim on July 18, 2005, Plaintiff promptly filed its Motion to Compel Arbitration and Stay Litigation on July 20, 2005.  Accordingly, Plaintiff's actions were not inconsistent with the right to arbitrate, the litigation machinery had not been substantially invoked and the parties were not well into preparation of their lawsuit when Plaintiff notified Defendant Day of its intent to arbitrate, Plaintiff did not request arbitration enforcement close to the trial date or delay for a long period before seeking a stay, and Plaintiff had not taken important intervening steps not available in arbitration prior to seeking a stay of litigation.  Moreover, because Plaintiff acted promptly, Defendant Day cannot argue that she was affected, misled, or prejudiced by any delay of Plaintiff in moving for arbitration.

   Defendants' arguments to the contrary do not persuade the Court otherwise.  Defendants maintain, for example, that Plaintiff has waived its right to arbitrate Defendant Day's claims by filing its complaint in this case, *i.e.*, by previously invoking the machinery of the judicial system. According to Defendants, "Allianz's claims are themselves subject to arbitration under the broad

4

arbitration provision," and by litigating instead of arbitrating these claims, Plaintiff has waived its contractual right to arbitrate Defendant Day's counterclaims.

This argument does not have merit for two reasons. First, the Court concludes that Plaintiff's claims are not covered by the arbitration clause contained in Service Agreement between Plaintiff and Defendant Day. Plaintiff's amended complaint alleges violations of federal and state racketeering laws, the Lanham Act, and the Minnesota Deceptive Trade Practices Act, as well as state claims for civil conspiracy, defamation, and interference with contractual and prospective relationships based upon Defendants' pattern and practice of making misrepresentations and omissions of material fact to regulators, media outlets, and others in attempt to extort money from Plaintiff and to harm its business, property, reputation, and other interests. The factual underpinnings of these claims are the unfounded and defamatory representations that Defendant Richards (and not Day) is entitled to millions of dollars of additional money, the alleged conspiracy to extort money that Defendants maintain Plaintiff owes Richards (and not Day), and the alleged misrepresentation and omission of facts regarding Plaintiff in order to pressure Plaintiff to pay Defendant Richards monies. The factual and legal underpinnings of Plaintiff's complaint do not relate to the 1996 Service Agreement between Plaintiff and Defendant Day or any commissions or monies allegedly owed to Defendant Day.

Second, the Court concludes that even if Plaintiff's claims are covered by the arbitration agreement, Plaintiff has not waived its right to arbitrate Defendant Day's claims because Defendant Day's counterclaims inject new, separate, and distinct issues into the litigation not raised by Plaintiff in its amended complaint. In *Design Benefits Plans, Inc. v. Enright*, 940 F. Supp. 200, 203, 206 (N.D. Ill. 1996), the district court held that an insurance agency that sued its former agent for breach of restrictive covenants did not waive its right to arbitrate the former agent's

5

unpaid commission counterclaims.  The court explained that the "counterclaim, which relates to [the plaintiff] DBP's withholding of commissions, is separate and distinct from DBP's claims advanced in the first amended complaint.  Thus, the matters DBP seeks to arbitrate were not injected into the litigation until [the defendant/counterclaimant] JEI filed its counterclaim." *Id.* at 203.  Moreover, the Court explained, "DBP did not answer the counterclaim; instead, DBP immediately moved to compel mediation/arbitration of JEI's counterclaim and stay proceedings pending resolution of those matters.  DBP has, at no time during the course of this litigation, acted inconsistently with its right to arbitrate JEI's counterclaim." *Id.*  Based upon these facts, the court concluded that the circumstances did not support a finding of waiver.  *Id.* (citing *Commercial Union Ins. Co. v. Gilbane Bldg. Co.*, 992 F.2d 386, 390 (1st Cir. 1993) (finding no waiver where plaintiff sought to compel arbitration of defendant's counterclaim which was separate and distinct from the claims in the complaint)).  Likewise, in *Liberty Chevrolet, Inc. v. Rainey*, 791 N.E.2d 625, 628-30 (Ill. Ct. App. 2003), the court held that a plaintiff car dealer that filed a replevin action in state court, which was arbitrable under a sales agreement, did not waive its right to arbitrate the customer's seven-count counterclaim alleging violations of state and federal consumer protection laws.  In *Liberty*, the court held that "there is no rule that filing a complaint waives the plaintiff's right to demand the arbitration of new issues that [a] defendant . . . raise[s] in a counterclaim." *Id.* at 630.

     Similarly, Plaintiff's amended complaint does not mention or otherwise rely upon Defendant Day's Service Agreement with Plaintiff or any commissions either paid or allegedly owed to Day.  Rather, Plaintiff's amended complaint alleges violations of certain federal and state laws based upon Defendants' alleged pattern and practice of making misrepresentations and omissions of material fact to regulators, media outlets, and others in attempt to extort money from

6

Plaintiff and to harm its business, property, reputation, and other interests.  Although Defendant Day maintains that her rights under the Service Agreement may be injected into the litigation of Plaintiff's claims as a defense to those claims, Plaintiff itself has not injected the Service Agreement into this litigation, and therefore Plaintiff itself has not previously invoked the machinery of the judicial system with respect to the matters at issue in Defendant Day's counterclaims.  Moreover, many of Plaintiff's claims appear to be unrelated to the Service Agreement between Defendant Day and Plaintiff, and it therefore is unclear under what circumstances Defendant Day would invoke her Service Agreement with Plaintiff as a defense to Plaintiff's claims.  For example, Plaintiff's claims that Defendants made false and misleading statements regarding (1) Plaintiff's alleged failure to pay persistency bonuses to policyholders, (2) Plaintiff's alleged status as a German company that acquired domestic companies, (3) Plaintiff's failure to pay Defendant Richards disability benefits allegedly owed to him, and (4) Plaintiff's claims that Defendants entered into a conspiracy to extort money that Defendants alleged Plaintiff owed to Defendant Richards under his Service Agreement with Plaintiff do not appear to relate in any way to the Service Agreement between Defendant Day and Plaintiff.  Accordingly, because the counterclaims raised by Defendant Day inject new issues into the litigation, and because these issues are separate and distinct from the issues raised by Plaintiff in its amended complaint, the Court concludes that Plaintiff has not waived its right to arbitrate Defendant Day's counterclaims.

    The Court also is unpersuaded by Defendants' argument that they have suffered prejudice as a result of Plaintiff's actions, and that Plaintiff therefore has waived its right to arbitrate Defendant Day's counterclaims.  Without citing any case law in support of their argument, Defendants maintain that the Court should adopt a different, more expansive definition of prejudice than that set forth by the Tenth Circuit.  *See, e.g.*, *Metz*, 39 F.3d at 1489; *see also Adams v.*

7

*Merrill Lynch Pierce Fenner & Smith*, 888 F.2d 696, 701-02 (10th Cir. 1989).  According to Defendants, the Court should not determine prejudice by examining whether Plaintiff delayed in moving to compel arbitration *after* Plaintiff became aware of Defendant Day's counterclaims.  Rather, the Court should look to Plaintiff's "intent" *prior* to the time Defendant Day asserted her counterclaims.  According to Defendants, "Allianz's actions until it filed its motion to compel arbitration, including the initiation of this lawsuit, could not provide a more clear indication of a waiver of its right to arbitrate."  Defendants maintain, "The prejudice to Defendants and Counterclaimants is palpable.  They were required to respond to the Complaint in a foreign and distant jurisdiction, to move for a change of venue, to assert extensive counterclaims, to commence extensive discovery; all because they were sued by Allianz, the party that now seeks to reverse course and arbitrate."

      The test Defendants urge this Court to adopt is not the law of this Circuit.  In evaluating whether a party has waived its right to arbitrate claims, the Court must determine whether any delay caused by the party seeking to compel arbitration affected, misled, or prejudiced the opposing party.  *Metz*, 39 F.3d at 1489; *see also Adams*, 888 F.2d at 701-02 ("The key question is whether [plaintiffs] suffered substantial prejudice by the delay in seeking arbitration.").  Here, Plaintiff promptly moved to arbitrate Defendant Day's counterclaims, and therefore Defendant Day suffered no prejudice resulting from any delay on Plaintiff's part.

      The fact that Defendants may have been prejudiced (not by delay, but by Plaintiff's actions in pursuing litigation) *prior* to Day's filing of her amended counterclaim and Plaintiff's subsequent filing of its Motion to Compel is not relevant to the question whether Plaintiff waived its right to arbitrate Defendant Day's counterclaims.  If Defendants believed they were prejudiced by responding to Plaintiff's complaint in a "foreign and distant jurisdiction," by moving for a change

8

of venue, by asserting extensive counterclaims, and by commencing extensive discovery, and if they believed that these claims were covered by the arbitration clauses in the Service Agreements, their remedy should have been, and was, to file a motion to compel Plaintiff to arbitrate those claims. Defendants chose not to file such a motion.

Because the Court has concluded that Plaintiff has not waived its right to arbitrate Counts II through VII of Defendant Day's counterclaim, and because it is undisputed that the arbitration clause covers Counts II through VII of the counterclaim, the Court grants Plaintiff's Motion to Compel arbitration of these counterclaims.

B.      Stay of Non-Arbitrable Claims.

The Court next must determine whether it should grant Plaintiff's Motion to Stay Litigation while the parties arbitrate Counts II through VII of Defendant Day's counterclaim. Whether to stay non-arbitrable claims pending arbitration of those claims which are subject to an arbitration agreement is a matter entrusted to the sound discretion of the trial court as a function of its right to control its own docket. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983). Courts consider numerous factors in determining whether to stay remaining claims, including the number and gravity of the claims to be arbitrated compared to those not subject to arbitration, judicial economy, and avoidance of confusion and possible inconsistent results. *Am. Home Assur. Co. v. Vecco Concrete Constr. Co.*, 629 F.2d 961, 964 (4th Cir. 1980); *City of Bismark v. Toltz, King, Duvall, Anderson & Assocs., Inc.*, 767 F.2d 429, 432-33 (8th Cir. 1985). "Broad stay orders are particularly appropriate if the arbitrable claims predominate the lawsuit and the nonarbitrable claims are of questionable merit." *Genesco Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 856 (2d Cir. 1987) (citation omitted).

Plaintiff maintains that if the Court were to deny Plaintiff's Motion to Stay Litigation,

9

"there would be numerous identical issues to be litigated and arbitrated," and that "there may be inconsistent outcomes for all of the[se] issues." Defendants concede that Richards' counterclaims for violation of the Unfair Insurance Practices Act, fraud, and unfair trade practices are identical to Day's counterclaims that will be arbitrated. Defendants also concede that there would be a possibility of inconsistent outcomes if the Court does not stay litigation of Defendant Richards' counterclaims for violation of the Unfair Insurance Practices Act, fraud, and unfair trade practices, Defendant Day's counterclaim for unfair trade practices, and Allianz's claims for federal RICO and New Mexico racketeering violations, civil conspiracy, interference with contractual and prospective relations, and defamation. In sum, of the fourteen, non-arbitrable claims, Defendants concede that litigating nine of those claims would result in possible inconsistent outcomes. Accordingly, to preserve judicial economy and to avoid confusion and possible inconsistent results, the Court grants Plaintiff's Motion to Stay Litigation of the remaining non-arbitrable claims pending arbitration of Defendant Day's counterclaims.

II.     Defendants' Motion for Injunction Prohibiting Arbitration.

Defendants move this Court for an injunction prohibiting Plaintiff from arbitrating Defendant Day's Counterclaims II through VII in the arbitration filed by Plaintiff on March 1, 2006, before the American Arbitration Association "unless and until a decision on [Plaintiff's] Motion to Compel and Stay is issued by the Court." Because the Court grants Plaintiff's Motion to Compel Arbitration and Stay Litigation, Defendants' Motion for Injunction is moot.

## CONCLUSION

For the reasons stated above, **IT THEREFORE IS ORDERED** that Plaintiff Allianz Life Insurance Company of North America's Motion to Compel Arbitration of Counts II-VII of Defendant Day's Amended Counterclaim and to Stay Remaining Claims, with Accompanying

Authorities, filed July 20, 2005 **[Doc. No. 31]** is GRANTED, and Defendant/Counterclaimant Jane Ann Day's Motion for Injunction Prohibiting Allianz's Arbitration of Defendant Day's Counterclaims II-VII and Supporting Authority, filed April 20, 2006 **[Doc. No. 148]** is DENIED as moot.

Dated this 14th day of September 2006.

                                                      JUDITH C. HERRERA
                                                      UNITED STATES DISTRICT JUDGE