IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FILED
at Santa Fe, NM

MAR 30 2007

MATTHEW J. DYKMAN
CLERK

ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA, A Minnesota Corporation,

Plaintiff,

vs.

No. 05-CV-0256 JCH/RLP

STEPHEN T. "BUD" RICHARDS and JANE ANN DAY,

Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Plaintiff's Motion to Dismiss Defendants' Amended Counterclaims with Accompanying Authorities, filed July 20, 2005 **[Doc. No. 32]**. The Court having considered the motion, briefs, and relevant law, and being otherwise fully informed, finds that the motion is not well taken and will be denied.

**BACKGROUND**

Plaintiff Allianz Life Insurance Company of North America brought this action against three individuals, two of whom had been insurance agents with the company, and one of whom is no longer a party to this action. The two former agents are Defendants Stephen T. "Bud" Richards and his daughter Jane Ann Day.

On July 18, 2005, Richards and Day asserted amended counterclaims against Allianz. On July 20, 2005, Allianz filed a motion to dismiss those counterclaims. Thereafter, on October 10, 2006, Defendant Day filed a notice dismissing with prejudice Counts II through VII (inclusive) of her amended counterclaim. That same day, Defendant Richards filed a notice dismissing with prejudice Counts II through V (inclusive) of his amended counterclaim. The only counterclaims

that remain in this litigation are Count I of Day's amended counterclaim (malicious abuse of process) and Count I of Richard's amended counterclaim (malicious abuse of process). Accordingly, to the extent Allianz moves for dismissal of Counts II through VII of Day's amended counterclaim or Courts II through V of Richards's amended counterclaim, that motion is moot and therefore denied.

**STANDARD**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides in relevant part that "failure to state a claim upon which relief can be granted" is a defense to a claim for relief in any pleading. Fed. R. Civ. P. 12(b)(6). A court may dismiss a cause of action under Rule 12(b)(6) for failure to state a claim only if it appears beyond a doubt that a plaintiff can prove no set of facts in support of the claim that would entitle him or her to relief. *See Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 811 (1993) (citation omitted). In considering a Rule 12(b)(6) motion, a court must assume all well-pleaded facts, but not conclusory allegations, to be true, and must draw all reasonable inferences in favor of a plaintiff. *See Housing Auth. of the Kaw Tribe v. City of Ponca,* 952 F.2d 1183, 1187 (10th Cir. 1991); *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir. 1998). The issue in reviewing the sufficiency of a complaint is not whether a plaintiff will prevail ultimately, but whether a plaintiff is entitled to offer evidence to support his or her claim. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).

These deferential rules, however, do not allow a court to assume that a plaintiff "can prove facts that [the plaintiff] has not alleged or that the defendants have violated the . . . laws in ways that [the plaintiff has not] alleged." *See Associated Gen. Contractors, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). The rules also do not require a court to accept legal conclusions or unwarranted inferences. *See United States v. Fisher*, 38 F.3d 1144,

1147 (10th Cir. 1994) (citation omitted).

**DISCUSSION**

Allianz maintains that the Court should dismiss Richards's and Day's malicious abuse of process counterclaims under Rule 12(b)(6) for failure to state a claim. The tort of malicious abuse of process was established by the New Mexico Supreme Court in *DeVaney v. Thriftway*, 124 N.M. 512, 953 P.2d 277 (N.M. 1997). In *DeVaney*, court restated the formerly independent torts of malicious prosecution and abuse of process as the single tort of malicious abuse of process. *Id.* at 519, 953 P.2d at 284. In so doing, the court noted that "[m]any courts and litigants have experienced a great deal of difficulty in distinguishing a claim of abuse of process from one of malicious prosecution because these two torts are closely related." *Id.* at 517, 953 P.2d at 282. (citations omitted). The court explained that "[o]riginally, the tort of abuse of process was created in order to alleviate the harsh procedural requirements of malicious prosecution," but that "[s]teadily . . . the two torts have become less distinguishable." *Id.* The court opined that the confusion between these two separate torts arises from a commonality in their purpose[1] and their elements.[2] *Id.* The court concluded, that "[b]ased on these similarities,

[1] "Both torts are designed to offer redress to a plaintiff who has been made the subject of legal process improperly, where the action was wrongfully brought by a defendant merely for the purpose of vexing or injuring the plaintiff, and resulting in damage to his or her personal rights." *Id.* "Further, both torts represent an attempt to strike a balance between the interest in protecting litigants' right of access to the courts and the interest in protecting citizens from unfounded or illegitimate applications of the power of the state through the misuse of the courts." *Id.* (citation omitted).

[2] "[T]he elements of both torts are similar. Abuse of process requires an improper act, a primary improper motive, and damages. Malicious prosecution requires initiation of proceedings, a lack of probable cause, favorable termination, malice, and damages." *Id.* "The institution of proceedings without probable cause, an element of malicious prosecution, can be characterized as an act not proper in the regular course of proceedings, an element of abuse of process. Also, the requirement of a favorable termination represents a procedural and evidentiary

we believe that there is no longer a principled reason for characterizing these two forms of misuse of process as separate causes of action." *Id.* at 518, 953 P.2d at 283.

The elements of a malicious abuse of process claim are (1) the initiation of judicial proceedings against the plaintiff by the defendant, (2) an act by the defendant in the use of process other than such as would be proper in the regular prosecution of the claim, (3) a primary motive by the defendant in misusing the process to accomplish an illegitimate end, and (4) damages. *Id.* Allianz argues that Richards and Day have failed to allege facts sufficient to establish an improper act (second requirement) and a primary motive to accomplish an illegitimate end (third requirement).

I. Second Requirement: Improper Act.

To satisfy the second requirement of a malicious abuse of process claim, *i.e.*, an improper act, the *DeVaney* court held that "there must be an overt act that is irregular or improper in the normal course of proceedings." *Id.* at 520, 953 P.2d at 285. Allianz maintains that Richards's and Day's allegations are insufficient to satisfy this requirement because they simply allege that Allianz's lawsuit, "in and of itself, constitutes a malicious abuse of process."

Richards and Day allege that Allianz improperly initiated its lawsuit without probable cause and that Allianz seeks "damages, injunctive and equitable relief knowing that [its] allegations . . . [are] groundless." Although the *DeVaney* court did caution that a lawsuit in and of itself cannot constitute an improper act, even if the filing occurs because of a malicious motive, *id.* ("the filing of a proper complaint with probable cause, and without any overt misuse

---

safeguard with respect to a showing of lack of probable cause." *Id.* at 518, 953 P.2d at 283 (citations omitted).

of process, will not subject a litigant to liability for malicious abuse of process, even if it is the result of a malicious motive"),[3] the court explicitly held that filing a complaint without probable cause could constitute such an act, *id.*[4] In so holding, the *DeVaney* court recognized that some courts have been reluctant to conclude that the lack of probable cause constitutes an improper act or a misuse of process. *Id.* at 520, 521, 953 P.2d at 285, 286. The court declined to hold similarly, however, because the court reasoned that the newly-created malicious abuse of process tort was created from the predecessor "tort of malicious prosecution, [which,] as it developed, recognized that the filing of a complaint without probable cause is a form of misuse of process." *Id.* The *DeVaney* court's holding is not inconsistent with the principle that a lawsuit alone cannot constitute an improper act, because an allegation that a party filed a complaint without probable cause is an overt act above and beyond a simple allegation that a party's complaint, in and of itself, constitutes an abuse of process. Pursuant to *DeVaney*, the Court concludes that

---

[3] *See also Richardson v. Rutherford*, 109 N.M. 495, 502, 787 P.2d 414, 421 (N.M. 1990) ("[t]here is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions") (citations omitted); *Simon v. Navon*, 71 F.3d 9, 16 (1st Cir. 1995) (the "[f]iling of a lawsuit is a 'regular' use of process, and therefore may not on its own fulfill the requirement of an abusive act, even if the decision to sue was influenced by a wrongful motive, purpose or intent").

[4] The *DeVaney* court held that there are two independent means of demonstrating a misuse of process: (1) filing a complaint without probable cause, or (2) some irregularity or impropriety suggesting extortion, delay, or harassment, conduct formerly actionable under the tort of abuse of process. *Id.* at 520, 522, 953 P.2d at 285, 287. The second means of demonstrating a misuse of process encompasses conduct formerly actionable under the tort of abuse of process. "Under this method, the act might be a procedural irregularity . . . or might be an act that otherwise indicates the wrongful use of proceedings, such as an extortion attempt. *Id.* (citing *Simon*, 71 F.3d at 15 ('Typical abuse of process cases involve misuse of such procedures as discovery, subpoenas, and attachment.'); Restatement (Second) of Torts Section 682 cmt. b ('The usual case of abuse of process is one of some form of extortion, using the process to put pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it.'")).

under New Mexico law Richards's and Day's counterclaims adequately allege an overt improper act sufficient to satisfy the second element of a malicious abuse of process claim.

Allianz's citations to *Hollars v. Southern Pacific Transportation Co.*, and *Zamora v. Creamland Dairies, Inc.*, do not persuade the Court otherwise. Although the *Hollars* court did hold that the plaintiff failed to state a cause of action for abuse of process because the plaintiff did not allege that the railroad "did anything more than carry out the process to its authorized conclusion," or that the railroad "preformed an act in the use of [the judicial] process that would not be proper," 110 N.M. 103, 109, 792 P.2d 1146, 1152 (N.M. Ct. App. 1989), *Hollars* is distinguishable on both the law and facts.

With respect to the law, *Hollars* is a pre-*DeVaney* case dealing with the former torts of malicious prosecution and abuse of process and not with the merged tort of malicious abuse of process. Consequently, the *Hollars* court sought to determine whether the railroad company established the second element of an abuse of process claim--*i.e.*, committing an act in the abuse of process that would not be proper in the regular prosecution of the charge--before the New Mexico Supreme Court adopted the improper act element as an element of the merged tort of malicious abuse of process and before the court held that filing a complaint without probable cause could serve as an improper act within the meaning of that element. *Id.* at 108, 792 P.2d at 1151.

In addition, *Hollars* is distinguishable on the facts. In *Hollars*, the plaintiff was employed by the railroad as an engineer, and the railroad's regulations provided that an employee could not be intoxicated while subject to duty. *Id.* at 105, 792 P.2d at 1148. One evening, when the plaintiff Hollars was on duty but did not expect to be called in, he went with friends to a restaurant and nightclub. *Id.* When one of the railroad's employees called Hollars and requested

that he report to work, Hollars, who had recently returned home, told the employee he was not in any condition to take his turn and that he declined to accept duty. *Id.* Later, another railroad employee informed two managerial employees that he had heard Hollars had been drinking and was unable to report to duty. *Id.* The railroad instituted a formal investigation, claiming that Hollars had been intoxicated while subject to duty in violation of company rules and regulations. *Id.* The railroad employee conducting the hearing found that Hollars had been intoxicated while subject to duty and the company dismissed Hollars from employment. *Id.* Hollars, under an union collective bargaining agreement, appealed his termination and was reinstated with back pay. *Id.* Hollars thereafter filed claims for malicious prosecution and abuse of process. *Id.* at 104, 792 P.2d at 1147.

In *Hollars*, unlike here, there was no indication that the defendant acted without probable cause or that the defendant otherwise abused any process. The railroad company simply conducted an investigation into the question whether *Hollars* was intoxicated while on duty in violation of the railroad's regulations. *Id.* at 105, 792 P.2d at 1148.

Here, in contrast, Richards and Day allege, among other things, that Allianz initiated its lawsuit against Richards and Day "without probable cause . . . knowing that the allegations . . . were groundless." In support of this contention, Richards and Day allege (1) that Allianz provided inaccurate agent and policyholder information to its agents, policyholders, and the Department of Insurance, (2) that Allianz provided the wrong amount in commissions, bonuses, and benefits to its agents and policyholders, (3) that Allianz's records were incomplete, and (4) that many policyholders were not receiving annual statements and were having their policies improperly lapsed. As additional support, Richards and Day also allege (1) that Public Regulation Commission member Tony Schaefer conducted an independent evaluation of

Richards's and Day's allegations and that he concluded that the allegations appeared to have merit, and (2) that the Department of Insurance conducted an examination and found 72 violations of law by Allianz under the Insurance Code (although the examiners ultimately concluded that there was "no substantial non-compliance"). Richards and Day further allege (1) that Allianz was aware that its records were inaccurate and incomplete, (2) that Allianz knew it had problems with its administration system, (3) that Alianz knew that Richards's assertions were correct and that in spite of this knowledge Allianz denied any wrongdoing, (4) that Allianz attempted to "cover up" these problems to avoid liability for its wrongdoing, and (5) that Allianz, in furtherance of this cover up, set about to discredit Richard, Day, and Schaefer by wrongfully charging them with improper motives and unlawful conduct. For purposes of Allianz's motion to dismiss, the Court must accept these allegations as true. *Housing Auth. of the Kaw Tribe v. City of Ponca,* 952 F.2d 1183, 1187 (10th Cir. 1991).

The *DeVaney* court defined probable cause "as the reasonable belief, founded on known facts established after a reasonable pre-filing investigation," 124 N.M. at 520, 953 P.2d at 285 (citations omitted), and determined that a lack of probable cause must be manifest, *id.* (citation omitted).[5] The court summarized a malicious-abuse-of-process plaintiff's burden in attempting to show a lack of probable cause as follows: the plaintiff "must demonstrate, by the applicable standard of proof, that the opponent did not hold a reasonable belief in the validity of the allegations of fact or law of the underlying claim." *Id.* at 522, 953 P.2d at 287.

Unlike Hollars, Richards and Day clearly allege facts which, if true, demonstrate by clear

---

[5] Although not an element of an action for malicious abuse of process, the *DeVaney* court held that an unfavorable termination is conclusive evidence of the existence of probable cause. *Id.* at 521, 953 P.2d at 286.

and convincing evidence[6] that Allianz filed its complaint against them without probable cause, *i.e.*, without holding a reasonable belief in the validity of the allegations of fact or law of the underlying claims. The Court therefore concludes that Richards and Day sufficiently allege facts which, if true, indicate that Allianz committed an act in the use of process other than such as would be proper in the regular prosecution of the claim. *Cf. id.* at 518, 520, 953 P.2d at 283, 285.

Allianz's citation to *Zamora* likewise is unpersuasive. *Zamora v. Creamland Dairies, Inc. & Prof. Security Serv., Inc.*, 106 N.M. 628, 747 P.2d 923 (N.M. Ct. App. 1987). Although the *Zamora* court did reject an abuse of process claim as a matter of law where "there [was] no allegation that defendants committed any act in the use of process that would not have been proper," that case, like *Hollars*, is distinguishable. In *Zamora*, the defendant Creamland received information that its milk was being sold without authorization out of a private residence. *Id.* at 630, 747 P.2d at 925. A Creamland manager hired co-defendant Professional Security Service, Inc., (PSS) to investigate. *Id.* PSS conducted surveillance of the house from which the sales were allegedly made, and observed Zamora, a route driver for Creamland, unload cases of milk in the residence's driveway; PSS also observed Zamora in a parking lot loading ten cases of

---

[6] "[A] malicious-abuse-of-process plaintiff alleging a lack of probable cause prior to a termination of the underlying claim . . . must demonstrate the lack of probable cause by clear and convincing evidence." *Id.* (citations omitted). "'For evidence to be clear and convincing, it must instantly tilt the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true.'" *DeVaney*, 124 N.M. at 522, 953 P.2d at 287 (citing *In re Sedillo*, 84 N.M. 10, 12, 498 P.2d 1353, 1355 (1972)). If a plaintiff chooses to delay the assertion of a malicious abuse of process claim until the termination of the underlying proceeding, the plaintiff must, instead, prove a lack of probable cause by a preponderance of the evidence; this lower standard is appropriate because the availability of a favorable-termination defense adequately safeguards honest litigants so that a higher standard of proof is unnecessary. *Id.* (citations omitted).

Creamland milk into a pickup truck driven by the owner of the house. *Id.* PSS prepared a report of the investigation implicating Zamora. *Id.* The Creamland manager asked Zamora to take a stress analyzer test, and the test indicated that Zamora was not being truthful. *Id.* The manager asked PSS to turn its investigative report over to law enforcement, and PSS complied. *Id.* Law enforcement conducted an independent investigation, and based upon that investigation, the district attorney's office brought charges against Zamora. *Id.* at 731, 747 P.2d at 926. At the close of the state's case, the trial court directed a verdict in Zamora's favor. *Id.* Delivery of PSS's report to the district attorney's office and Zamora's indictment and acquittal formed the basis for Zamora's claims of malicious prosecution against Creamland and PSS. *Id.*

*Zamora*, like *Hollars*, is a pre-*DeVaney* abuse of process case, and therefore lack of probable cause was not at issue in that case. Moreover, in *Zamora*, there was no evidence that Creamland and PSS abused the process in any way. The court concluded that there was "no allegation that defendants committed any act in the use of process that would not have been proper," that defendants acted with an "ulterior motive," *id.* at 635, 747 P.2d at 930, or that defendants withheld or falsified information, *id.* Rather, PSS simply reported its observations to law enforcement and law enforcement conducted its own investigation. Here, in contrast, Richards and Day allege facts, which, if true, indicate by clear and convincing evidence that Allianz filed its complaint without probable cause (*i.e.* without a reasonable belief in the validity of the allegations of fact or law), *see supra* pp. 7-9, and that Allianz therefore committed an improper act. Accordingly, *Zamora* is distinguishable and does not persuade the Court to grant Allianz's motion to dismiss.[7]

---

[7] For the same reasons, the non-New Mexico abuse of process cases cited by Allianz are unpersuasive. *Cf. Meyers v. Krueger*, 759 F. Supp. 770, 774 (E.D. Okla. 1990) (abuse of process

II. Third Requirement: Primary Motive to Accomplish an Illegitimate End.

Allianz maintains that the counterclaims fail to allege facts that demonstrate that Allianz had a primary motive to accomplish an illegitimate end. To the extent any such allegations do exist, Allianz claims that those allegations are conclusory in nature, and that Richards and Day therefore cannot withstand a motion to dismiss.

The third requirement of a malicious abuse of process claim requires a plaintiff to demonstrate that a defendant acted with a primary motive to accomplish a legitimate end. It is insufficient to allege that a malicious-abuse-of-process defendant acted with ill will or spite. *DeVaney*, 125 N.M. at 522, 953 P.2d at 287 (citing Prosser & Keeton, § 121, at 897 ("Even a pure spite motive is not sufficient where process is used only to accomplish the result for which it was created"; *id.* § 120, at 894-95 ("The plaintiff in a civil suit is always seeking his own ends.")). "There must be a purpose to accomplish an illegitimate end." *Id.* (citations omitted). The *DeVaney* court listed the following typical, but non-exclusive, examples of improper purposes that could serve as the basis for a malicious abuse of process action: "(1) a litigant pursues a claim knowing that it is meritless; (2) a litigant pursues a claim primarily in order to deprive another of the beneficial use of his or her property in a manner unrelated to the merits of the claim; (3) a litigant misuses the law primarily for the purpose of harassment or delay; or (4) a litigant initiates proceedings primarily for the purpose of inducing settlement in an unrelated proceeding or for some other form of extortion." *Id.* (citation omitted). The *DeVaney* court

---

claim legally insufficient where "[n]o allegation is made that defendants committed some willful act in the use of process outside the confines of the complaint"); *see also Crenshaw v. United States*, 959 F. Supp. 399, 404 (S.D. Tex. 1997) (abuse of process claim insufficient because the plaintiff did not "name any judicial process that the Defendant misused for its own invalid purposes").

further indicated that "'it may not be inferred from evidence of an improper purpose alone that there was not probable cause,'" and that the burden of proving the overt act by independent evidence remains upon the plaintiff. *Id.* (citations omitted).

Allianz argues that Richards's and Day's allegation that Allianz's "primary motive in initiating the proceedings was to accomplish the illegitimate end of silencing" defendants and to prevent defendants from "continuing to seek regulatory assistance and [from] speaking out on their good faith beliefs that Allianz was violating its obligations to its agents and policyholders" is insufficient because intimidating or silencing a party is "simply not recognized as an adequate basis for a malicious abuse of process claim." Allianz's Mot. to Dismiss at 25. Allianz's contention, however, flatly ignores the plain language of the *DeVaney* opinion, which states that one "possible bas[is] for establishing [a defendant's] malice in its alleged misuse of process [is] . . . pursuing the action and misusing process primarily for the purpose of intimidation in order to silence [a plaintiff's] speech." 124 N.M. at 528, 953 P.2d at 293 (holding that a question of material fact existed with respect to whether malicious abuse of process plaintiff demonstrated that the defendant had a primary motive to accomplish an illegitimate end where the plaintiff presented evidence that the defendant pursued litigation primarily for the purpose of intimidating and silencing the plaintiff). The court also held that filing a claim with knowledge that it was groundless could constitute an illegitimate end. *Id.* (holding that a question of material fact existed with respect to whether malicious abuse of process plaintiff demonstrated that the defendant had a primary motive to accomplish an illegitimate end where the plaintiff presented evidence that the defendant's claims were groundless). Allianz's argument, therefore, does not have merit.

Allianz also maintains that Richards's and Day's allegations are conclusory and therefore

insufficient to establish that Allianz acted with the primary motive to misuse the process to accomplish an illegitimate end. The *DeVaney* court held, however, that "an overt misuse of process, such as a lack of probable cause, or an excessive attachment, may support an inference of an improper purpose." *Id.* at 522, 953 P.2d at 287. The court also held that "[t]he degree to which the process has been misused will determine the strength of the permissible inference of an improper motive." *Id.* at 523, 953 P.2d at 288. Assuming that Richards's and Day's well-pled allegations are true, as the Court must on a motion to dismiss, the Court concludes that those allegations establish that Allianz substantially misused the process. The Court therefore may draw a strong inference of an improper motive. *Cf. id.* At this stage in the litigation, given this substantial inference, the Court cannot say that it appears beyond a doubt that Richards and Day can prove no set of facts in support of their counterclaims that would entitle them to relief. *Cf. Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 811 (1993) (citation omitted).

In addition, Richards's and Day's allegations of improper motive are not simply conclusory in nature. The counterclaims do not only state in bald fashion that Allianz had a primary motive to accomplish an illegitimate end. Rather, Richards and Day allege that Allianz's primary motive in initiating the proceedings was to accomplish the illegitimate end of silencing defendants and preventing them from continuing to seek regulatory assistance and speaking out on their beliefs that Allianz was violating its obligations to its agents and policyholders. *Cf. DeVaney*, 124 N.M. at 528, 953 P.2d at 293 (recognizing that misusing process primarily for the purpose of intimidation or to silence a party may be an illegitimate end). Moreover, as this Court already has concluded, Richards and Day have alleged sufficient facts which, if true, demonstrate that Allianz filed its claims without probable cause. *See supra* pp. 7-9. The Court now concludes that those same allegations, if true, also establish that Allianz filed its claims against

Richards and Day with knowledge that those claims were groundless. *Cf. DeVaney*, 124 N.M. at 522, 953 P.2d 287 (holding that filing a claim knowing it is groundless could constitute an illegitimate end). Therefore, at this stage of the litigation, the Court cannot conclude that it appears beyond a doubt that Richards and Day can prove no set of facts to establish the third element of their malicious abuse of process counterclaims. *Cf. Hartford*, 509 U.S. at 811. The Court therefore denies Allianz's motion to dismiss.

**CONCLUSION**

For the reasons stated above, **IT THEREFORE IS ORDERED** that Plaintiff's Motion to Dismiss Defendants' Amended Counterclaims with Accompanying Authorities, filed July 20, 2005 **[Doc. No. 32]**, is hereby **DENIED**.

Dated this 30th day of March 2007.

JUDITH C. HERRERA
UNITED STATES DISTRICT JUDGE